IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**DEVELLE HENDERSON**                                                           **PLAINTIFF**

vs.                                         CIVIL ACTION NO.:  1:11cv141-SA-DAS

**SGT. CHAD GARNETT, et al.**                                        **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Develle Henderson, a Mississippi prisoner proceeding pro se, brings a lawsuit pursuant to 42 U.S.C. § 1983, alleging claims of false arrest, false imprisonment, and/or malicious prosecution against Sergeant Chad Garnett[1] and Chief of Police David Lindley[2] ("Defendants"), of the Starkville Police Department. Defendants have filed a motion for summary judgment, asserting that Plaintiff's claims must fail as a matter of law.[3] Upon consideration of the pleadings and the applicable law, the Court finds that Defendants are entitled to the grant of their summary judgment motion, for the reasons that follow.

**Background**

On November 23, 2009, Plaintiff was arrested for the alleged kidnapping and robbery of Steven Matthew Francis. The events giving rise to Plaintiff's arrest occurred on November 21, 2009. Late in the evening on that date, Plaintiff knocked on the door of Francis' apartment. (*See* Defs. Mot. Summ. J., Ex. A). Francis happened to be at home with his fiancee at the time. (*See*

---

[1] Defendant Garnett is currently employed as Chief Deputy with the Oktibbeha County Sheriff's Department. (*See* Defs.' Mot. Summ. J. Mem., n.1).

[2] There is inconsistency in the filings as to whether the Chief of Police spells his last name as "Linley" or "Lindley." Because the motion for summary judgment and response identify the spelling as "Lindley," the Court adopts same and uses this spelling throughout.

[3] Doc. entry no. 53.

*id.*). Plaintiff identified himself to Francis as "Tyrone" and asked Francis for $20 to help Plaintiff's daughter, whom he alleged suffered from asthma. (*See id.*). Francis stated that Plaintiff was extremely nervous and fidgety, and that he kept his left hand in his jacket pocket throughout their conversation. (*See id.*). There was a bulge in the pocket, and Francis thought Plaintiff might have a gun. (*See id.,* Ex. D). Francis gave Plaintiff $20, and immediately thereafter, Plaintiff asked Francis to give him a ride to the hospital. (*See id.*). Francis stated that he became worried about his and his fiancee's safety, so he agreed to take Plaintiff to the hospital. (*See id.*).

Once in the vehicle, Plaintiff asked Francis to make a stop at a couple of convenience stores, which were closed. (*See id.*). Francis states that he became fearful and realized that he was "trapped" until Plaintiff decided to get out of the car. (*See id.*). When they passed a store that was still open, Francis stopped the vehicle to allow Plaintiff to go inside. (*See id.*). Plaintiff returned to the vehicle, having bought a pack of cigarettes, and he eventually directed Francis to take him to a rundown apartment complex. (*See id.*). Francis left him there and returned to his own apartment complex. (*See id.*). Francis stated that he felt as though he had "been marked" and no longer felt safe in his home. (*See id.*). Francis informed his landlord of what had happened, and the landlord advised him to contact Sergeant Chad Garnett, who asked Plaintiff to do a photographic lineup with six individuals. (*See id.*). On November 23, 2009, Francis identified Plaintiff from the lineup as the man he knew as "Tyrone." (*See also id. at* Ex. B, Ex. D).

Plaintiff was arrested by the Starkville Police Department on November 21, 2009, on an unrelated forgery charge. (*See id.*, Ex. C, 10-11). He was arrested on charges of kidnapping and

robbery on November 23, 2009, while still in custody on the forgery charge. (*See id.*). On January 15, 2010, an Oktibbeha County Grand Jury refused to indict Plaintiff on either kidnapping or robbery charges. (*See* Defs. Mot. Summ. J., Ex. F). Plaintiff filed the instant lawsuit on June 17, 2011, alleging that his constitutional rights were violated by Sergeant Garnett and Chief Lindley. Plaintiff admits that he lied to Francis in order to get money to feed Plaintiff's cocaine addiction. (*See id.,* Ex. C, 35-36). Plaintiff notes, however, that he never forced Francis to give him money or take him anywhere, and that Francis could have "escaped" while Plaintiff was in the convenience store if Francis was really that fearful. (*See id.* at 38-39). Plaintiff maintains that he was only arrested because Sergeant Garnett had a "personal vendetta" against him. (*See id.* at 37).

Defendants moved for summary judgment, asserting that Plaintiff's claims fail as a matter of law because probable cause existed to arrest him. Defendants otherwise assert Plaintiff cannot prove municipal liability or overcome the qualified immunity defense asserted by Defendants. Plaintiff has responded to the motion, asserting that Defendants' answer, some of the pre-discovery core disclosures in this case, and Defendants' witness list suggest that both Sergeant Garnett and Chief Lindley have personal knowledge of the events giving rise to this lawsuit.

**Summary Judgment Standard**

Summary judgment is proper where the moving party shows that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party moving for summary judgment must demonstrate to the Court that there is an "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

3

317, 323 (1986). A factual issue is "material only if its resolution could affect the outcome of the action." *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nomoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the evidence, the Court is to believe the nonmovant's evidence and "all justifiable inferences are to be drawn in his favor." *Id.* at 255.

Once a motion for summary judgment is properly supported, however, the nonmovant cannot defeat it by making "conclusory allegations, speculation, and unsubstantiated assertions." *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (citation omitted). If the nonmovant cannot demonstrate "the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial," then summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 322.

### Discussion and Analysis

*The Claims: False Arrest, False Imprisonment, and/or Malicious Prosecution*

Plaintiff's lawsuit is brought under 42 U.S.C. § 1983, which creates a remedy for individuals who have suffered the deprivation of a constitutional right because of the actions of someone operating "under color of state law." *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 1994). To prevail on a claim of false arrest or imprisonment under § 1983, Plaintiff must show that there was no probable cause to arrest him for kidnapping and robbery on November 23, 2009. *See Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) (citations omitted). Probable cause to arrest exists when facts and circumstances within an arresting officer's knowledge are sufficient that a reasonable person would believe that an offense has been or is being committed.

*United States v. Bustamante-Saenz*, 894 F.2d 114, 118 (5th Cir. 1990).

In this case, Francis gave a victim's statement in which he stated that he felt threatened to accommodate Plaintiff's requests for money and transportation, and that he felt "trapped" by Plaintiff's behavior. Francis' statement and positive identification of Plaintiff provided Sergeant Garnett with probable cause to arrest Plaintiff. *See, e.g., United States v. Burbridge*, 252 F.3d 775, 778 (5th Cir. 2001) (finding that "[a]n ordinary citizen's eyewitness account of criminal activity and identification of a perpetrator is normally sufficient to supply probable cause"); *Simmons v. McElveen*, 846 F.2d 337, 339 (5th Cir. 1998) (holding that eyewitness statement alone is sufficient to support a finding of probable cause); *see also Mingo v. State*, 944 So. 2d 18 (Miss. 2006) (finding statements of victim and defendant's own corroboration more than sufficient to establish probable cause for defendant's arrest). Because probable cause existed for the arrest, there is no cause of action for false arrest under § 1983. *See Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998) (holding that the illegality of an arrest "hinges on the absence of probable cause").

Additionally, Petitioner's claim for malicious prosecution is not cognizable in § 1983. *See Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (en banc) (holding that there is no "freestanding constitutional right to be free from malicious prosecution"). To the extent that such a claim could be asserted under State law and met the requirements of the Mississippi Tort Claims Act[4], the claim is defeated by the existence of probable cause to initiate charges. *See, e.g., McClinton v. Delta Pride Catfish, Inc.*, 792 So.2d 96, 973 (Miss. 2001) (recognizing "want of probable cause" as requisite element for malicious prosecution claim under Mississippi law).

---

[4] Defendants specifically assert that Plaintiff has failed to adhere to the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-1, *et seq*.

Therefore, no constitutional violation occurred in this case, and Defendants are entitled to summary judgment as a matter of law. Alternatively, the Court finds that Plaintiff cannot establish municipal liability in this cause, nor does he defeat the defense of qualified immunity asserted by Defendants.

*Official Capacity: Municipal Liability*

Plaintiff does not state whether the instant suit was intended to proceed against Defendants in their personal or official capacities. In such cases, courts are to inquire into the substance of the claims, the relief sought, and the course of the proceeding to make the determination. *See Forside v. Miss. State Univ.*, No. 101cv438-DD, 2002 WL 31992181, 5 n.2 (N.D. Miss. Dec. 30, 2002). Defendants assert that Plaintiff intended to sue them in their official capacities, as he used their official titles and address to initiate suit, and the acts complained of occurred while Defendants were acting within the scope of their duties for the Starkville Police Department. Plaintiff did not object to Defendants' assertion that Plaintiff intended to sue them in their official capacities, and the Court finds Defendants' argument supported by the proceedings in this case. *See United States ex rel. Adrian v. Regents of Univ. of Ca.*, 363 F.3d 398, 402-03 (5th Cir. 2004) (finding that the course of proceedings indicated that defendant was sued in his official capacity because the plaintiff never challenged that assertion in defendant's motion to dismiss).

Suit against Defendants in their official capacities is essentially a suit against the City of Starkville. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer

6

is an agent.").[5]  Because the doctrine of *respondeat superior* is not recognized in § 1983 actions, cities are not liable for constitutional violations of their employees unless those violations were the direct result of a municipal custom or policy.  *See, e.g., City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *see also Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding that municipality may be held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or those officials whose acts may be fairly said to be those of the municipality).  Proof of three elements is required for Plaintiff to show municipal liability under § 1983:  a policy maker, an official policy, and a violation of constitutional rights whose "moving force" is the policy or custom.  *Hampton Co. Nat. Sur., LLC v. Tunica County, Miss.*, 543 F.3d 221, 227 (5th Cir. 2008) (citations omitted).

Plaintiff has not asserted any municipal policy that was the moving force behind the alleged deprivation of his right not to be wrongfully arrested, imprisoned, or prosecuted.  The Court previously found that Plaintiff had failed to allege any policy by the Starkville Police Department or the City of Starkville that caused his alleged constitutional deprivations.  (*See* doc. entry no. 21; doc. entry no. 41).  As Police Chief, Chief Lindley's actions do constitute City policy.  *See Taylor v. Town of DeKalb*, Miss, Civ. Action No. 4:06cv124STL-LRA, 2009 WL 174823, 4 (S. D. Miss. June 19, 2009) (citations omitted); *see also* Miss. Code Ann. § 21-21-1 ("The marshal or chief of police shall be the chief law enforcement officer of the municipality and shall have control and supervision of all police officers employed by said municipality."). However, Plaintiff has made no allegation that Chief Lindley was in any way involved in his

---

[5] Under Fed. R. Civ. P. 17(b), the capacity of an entity to sue or be sued is determined by state law.  Under Mississippi law, a police department is not a separate legal entity with the capacity to be sued.  *See, e.g., Stewart v. Jackson Co., Miss.,* No. 1:07cv1270WJG-JMR, 2008 WL 4287112, 1 (S.D. Miss. Sept. 16, 2008) (citations omitted).

arrest or prosecution for robbery and kidnapping. Because Plaintiff has not alleged any involvement by Chief Lindley in the events at issue, his actions cannot constitute a policy under which to attach municipal liability. *See Kholer v. Englade*, 470 F.3d 1104, 1115 (5th Cir. 2006) (finding that a plaintiff suing police chief must show his personal involvement in the constitutional violation or a sufficient causal connection between his conduct and the violation). Therefore, Plaintiff has failed to demonstrate that a municipal policy led to any constitutional deprivation in this case.

*Personal Capacity: Qualified Immunity*

The doctrine of qualified immunity serves to protect government officials from personal liability for claims against them in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This is a two-step inquiry. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, the question is whether Plaintiff has alleged facts that demonstrate the deprivation of a constitutional right. *Id*. If a constitutional violation has been established, then the Court determines whether the conduct was objectively reasonable in light of the clearly established law at the time. *See id.* The Fifth Circuit has reiterated the Supreme Court's sentiment that courts should "not deny immunity unless 'existing precedent [has] placed the statutory or constitutional question *beyond debate*.'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (emphasis in original) (citation omitted).

In this case, no constitutional violation occurred. However, even if one did occur, Defendants' actions were objectively reasonable in light of the established law. Here, Plaintiff was arrested upon the sworn victim statement of an individual who contacted the Starkville

Police Department alleging that he felt threatened by Plaintiff's actions and forced to comply with Plaintiff's demands. Because a reasonable officer could have reasonably, even if mistakenly, concluded that Plaintiff committed a crime, Defendants are otherwise entitled to immunity. *See Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).

## Conclusion

Based on the foregoing, Defendants' motion for summary judgment (doc. entry no. 53) is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**. All pending motions are **DENIED**. A final judgment in accordance with this order will issue this day.

**SO ORDERED** this the 22nd day of August, 2012.

                                             **/s/ Sharion Aycock**
                                             **U.S. DISTRICT JUDGE**